**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**MICHAEL OLDANI and HEATHER OLDANI,**
**individually and on behalf of all others similarly situated,**

Plaintiffs,

v.

**FORD MOTOR COMPANY, a Delaware corporation,**

Defendant,
_____________________________________/

Case: 2:26.

Judge

**JURY TRIAL DEMANDED**

Philip Matthews (P53649)
Attorney for Plaintiffs and Class Members
22422 Edison Street
Dearborn, MI. 48124
313-492-0991
Pmlaw17@gmail.com

Ford Legal Dept.
Attorneys for Ford Motor Co.
20901 Oakwood Blvd.
Dearborn, MI. 48124
Ph
Email
_____________________________________/

## CLASS ACTION COMPLAINT

Plaintiffs Michael Oldani and Heather Oldani state as follows for their Class Action Complaint against Defendant Ford Motor Co. ("Ford"):

## INTRODUCTION

1. Plaintiffs Michael Oldani and Heather Oldani bring this action individually and on behalf of a nationwide class of consumers who, like them, purchased (Nautilus VIN # 5LMPJ8J4XSJ891433), or leased Ford or Lincoln vehicles equipped with Ford's BlueCruise driver-assistance technology.
2. This action concerns a consumer product and software system that Ford markets as a significant feature of qualifying vehicles and for which consumers pay substantial consideration.
3. Since inception, the BlueCruise feature has not operated fully and updates through the vehicle's system do not succeed.
4. Plaintiffs reported this issue to their salesman and the dealership, Jack Demmer Ford in Dearborn, Michigan. The dealership, when contacted, relayed that there are currently no solutions to the issues they have encountered.
5. Plaintiff Michael Oldani has attempted to acquire updates about every four to six weeks since purchasing the vehicle.
6. BlueCruise is not merely a static piece of equipment. It is a software-dependent driver-assistance system the functionality of which depends upon vehicle software, mapping information, electronic systems, sensors, connectivity, and continuing software support.
7. Ford represents to consumers that BlueCruise provides hands-free highway driving assistance and that successive BlueCruise software versions provide material improvements to the system.

8. Ford's own published materials identify successive BlueCruise software versions and describe improvements including enhanced hands-free operation, improved performance around curves and narrow lanes, improved in-lane stability, Lane Change Assist, and In-Lane Repositioning.

9. Ford further represents that eligible vehicles receive newer BlueCruise versions through over-the-air software updates.

10. Ford also maintains a specific BlueCruise update process and expressly addresses situations in which BlueCruise maps are not updating or consumers are not receiving map updates.

11. Ford nevertheless has sold and continues to support vehicles in which BlueCruise does not fully perform as represented and in which applicable BlueCruise software and/or related updates cannot successfully be received, downloaded, installed, or implemented.

12. The injury alleged here is principally an economic and consumer injury. Consumers paid for vehicles equipped with BlueCruise and reasonably expected to receive the represented functionality and continuing software support associated with that feature.

13. Ford has failed to deliver and maintain the BlueCruise functionality and software support for which consumers paid, despite Ford's knowledge of BlueCruise software, update, and functionality problems.

14. Ford has failed to provide an adequate and effective remedy to affected consumers.

15. Plaintiffs seek damages and other relief available under applicable warranty, consumer-protection, contract, product-liability, and federal law.

## PARTIES

16. Plaintiff Michael Oldani is a resident of Plymouth, Michigan.

17. Plaintiff Heather Oldani is a resident of Plymouth, Michigan.

18. Ford is a Delaware corporation with its headquarters on Oakwood Blvd. in Dearborn, Michigan 48124.

## JURISDICTION AND VENUE

19. This Court has jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), to the extent its statutory requirements are satisfied.

20. The proposed class consists of consumers from multiple states, including states other than Michigan and Delaware, and the aggregate amount in controversy is expected to exceed $5,000,000, exclusive of interest and costs.

21. Plaintiffs anticipate that additional representative plaintiffs from states other than Michigan and Delaware will be identified and joined as the litigation and investigation proceed.

22. Plaintiffs also assert claims under federal warranty law, including the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 et seq., to the extent its statutory requirements are satisfied. The amount in controversy as to individual claims, including the Plaintiffs' claim, will be greater than $25. In addition, the number of affected purchasers who will join as named plaintiffs is believed to be more than one hundred. (Plaintiffs will seek leave to amend this Complaint

as additional representative plaintiffs are identified and the applicable warranty provisions are confirmed.) Accordingly, the Court also has subject-matter jurisdiction under 28 U.S.C. § 1331.

23. Pursuant to 28 U.S.C. § 1367(a), the Court also has supplemental jurisdiction over the Plaintiffs' state-law claims, which are so related to the Plaintiffs' federal claim that they form part of the same case or controversy.

24. Venue is proper in this District because Ford is headquartered in Dearborn, Michigan, conducts substantial business in this District, and substantial events and conduct relevant to this action occurred in this District.

## FACTUAL ALLEGATIONS

### A. Ford's BlueCruise Technology

25. Ford markets BlueCruise as a hands-free highway driver-assistance technology available on qualifying Ford and Lincoln vehicles.

26. BlueCruise operates through an integrated combination of vehicle hardware and software.

27. The functionality of BlueCruise depends upon software, electronic control systems, mapping data, vehicle connectivity, sensors, and other technological systems.

28. Ford's own materials explain that software updates provide vehicle fixes, new features, and upgrades.

29. Ford specifically identifies BlueCruise software updates as providing material improvements to BlueCruise functionality.

30. Ford's published BlueCruise information identifies successive software versions and associated functionality.

31. Ford states that BlueCruise 1.3 and 1.4 provide improvements to hands-free operation and system performance.

32. Ford identifies improvements including enhanced performance around curves and narrow lanes, improved in-lane stability, Lane Change Assist, and In-Lane Repositioning.

33. Ford further represents that newer BlueCruise versions are provided to eligible vehicles through over-the-air software updates.

34. Ford's public materials instruct vehicle owners to enable automatic software updates and establish an appropriate update schedule to receive available updates.

35. Ford therefore recognizes that continuing software support is material to the operation and functionality of BlueCruise.

**B. Ford's Own Recognition of Update Problems**

36. Ford maintains a dedicated BlueCruise map-update process.

37. Ford expressly provides instructions for consumers experiencing circumstances in which BlueCruise maps are not updating or the consumer is not receiving map updates.

38. Ford instructs consumers experiencing such problems to contact Ford and, in appropriate circumstances, to visit an authorized Ford dealer.

39. Ford also provides troubleshooting procedures for BlueCruise functionality

problems, including circumstances in which BlueCruise unexpectedly turns off or fails to activate.

40. Ford identifies outdated or inaccurate navigation-map information as one circumstance that can affect BlueCruise availability.

41. Ford's own support materials therefore establish that software, mapping, updating, and related electronic systems are material components of the BlueCruise experience.

42. Ford also acknowledges that vehicle software updates can fail to start and that vehicles may display update-related error messages.

43. These public representations and support procedures demonstrate Ford's knowledge that software updates and software-related functionality are material to the operation of its vehicles and BlueCruise system.

**C. The Oldani Purchase**

44. On or about December 13, 2024, Plaintiffs purchased a 2025 Lincoln Nautilus.

45. The vehicle was equipped with and/or sold with Ford's BlueCruise feature.

46. The vehicle purchase sticker identifying the vehicle and its equipment is attached as **Exhibit 1 (Vehicle's Sticker)**.

47. Exhibit 1 identifies BlueCruise among the vehicle's optional equipment.

48. Plaintiffs paid approximately $51,790 for the base vehicle and approximately $9,180 for options identified on the vehicle sticker. The options amount included BlueCruise together with other optional equipment.

49. Before purchasing the vehicle, Plaintiffs reviewed the vehicle's equipment and

options.

50. Plaintiffs saw BlueCruise identified as an optional feature and saw it as an advantage.

51. Plaintiffs reasonably understood that they were purchasing a vehicle equipped with BlueCruise and that Ford would support the feature through applicable software and system updates.

52. Plaintiffs reasonably expected BlueCruise to operate as represented by Ford.

53. Plaintiffs further reasonably expected that applicable software updates necessary to maintain, improve, correct, or support BlueCruise would be made available to their vehicle when applicable.

**D. Mr. Oldani's Repeated Attempts to Obtain Updates**

54. After purchasing the vehicle, Mr. Oldani repeatedly attempted to determine whether a BlueCruise software update was available through the vehicle's software-update screen.

55. Mr. Oldani attempted to check for and obtain updates approximately every four to six weeks during his ownership of the vehicle.

56. Despite these repeated attempts, the vehicle did not receive a BlueCruise software update.

57. Mr. Oldani did not simply disregard the condition. He repeatedly attempted to obtain software updates and determine whether Ford had provided a solution.

58. Mr. Oldani also contacted his selling dealership, Jack Demmer Ford of Dearborn, Michigan, concerning the BlueCruise problem.

59. Mr. Oldani communicated through his salesperson concerning the BlueCruise issue and the absence of appropriate software updates.

60. The dealership attempted to obtain information and assistance directly from Ford concerning BlueCruise.

61. Despite the dealership's efforts and Mr. Oldani's repeated attempts, neither the dealership nor Ford provided Plaintiffs with an effective corrective update, correction, or adequate explanation resolving the condition.

62. Ford was therefore placed on notice of Plaintiffs' concerns regarding BlueCruise and the vehicle's software-update status.

63. Ford nevertheless failed to provide Plaintiffs with an effective remedy.

**E. The BlueCruise Defect**

64. The Plaintiffs' BlueCruise system has not operated fully as represented by Ford.

65. The Plaintiffs' vehicle has not received applicable BlueCruise software updates despite repeated efforts to obtain such updates.

66. The issue is not merely that Ford has declined to release every future BlueCruise feature for every vehicle.

67. Rather, qualifying vehicles have been represented as receiving continuing BlueCruise software support while certain vehicles cannot successfully receive, download, install, or implement applicable software updates.

68. The inability to receive applicable software updates is material because Ford itself represents that successive BlueCruise versions provide meaningful

improvements to system functionality.

69. Affected consumers may remain on older BlueCruise software while Ford has developed, released, or deployed newer software for other qualifying vehicles.

70. Certain affected vehicles experience BlueCruise functionality that is incomplete, impaired, or inconsistent with Ford's representations.

71. The precise technical cause of the condition is presently within Ford's possession and control and will be established through discovery.

72. Such discovery may include Ford's software records, update logs, technical service information, engineering records, customer complaints, warranty records, dealership records, software architecture, and communications concerning BlueCruise.

**F. BlueCruise Functionality and Safety-Related Performance**

73. BlueCruise is marketed as a driver-assistance technology intended to assist the driver during highway operation.

74. Ford's representations concerning BlueCruise therefore concern more than convenience or entertainment.

75. Plaintiffs are investigating reports that BlueCruise-equipped vehicles may fail to perform particular driver-assistance functions under circumstances in which consumers reasonably expected the system to operate.

76. Plaintiffs will identify and plead specific functionality failures where supported by evidence and Ford's actual representations concerning the applicable vehicle, software version, and operating conditions.

77. Plaintiffs do not allege that BlueCruise is intended to replace the driver or eliminate the driver's responsibility to monitor the roadway.

78. Ford itself states that BlueCruise is a driver-assistance feature and that drivers must remain attentive and prepared to resume control.

79. A driver-assistance system must perform the functions that Ford represents it will perform, subject to the limitations Ford properly discloses.

80. Where a software defect prevents a represented driver-assistance function from operating as designed, the resulting condition may constitute evidence that the affected product does not conform to Ford's representations and may, depending upon the facts and governing law, constitute a product defect.

**G. Ford's Knowledge**

81. Ford possesses extensive information concerning BlueCruise software versions, update eligibility, update histories, failed update attempts, software modules, vehicle connectivity, dealership service records, warranty claims, consumer complaints, technical investigations, and vehicle data.

82. Ford knows which vehicles are eligible for particular BlueCruise software versions.

83. Ford knows when BlueCruise software versions are developed and released.

84. Ford knows which vehicles successfully receive particular software updates.

85. Ford also knows which vehicles repeatedly fail to receive or implement applicable updates.

86. Ford has received notice of BlueCruise software and functionality problems

through consumers, authorized dealerships, warranty claims, customer-service communications, technical information, and other sources.

87. Ford nevertheless continues to market BlueCruise and charge consumers for the feature while failing to adequately disclose material limitations concerning software updates and functionality.

**H. Economic Injury**

88. Plaintiffs and Class Members paid for vehicles equipped with BlueCruise.

89. Plaintiffs and Class Members paid consideration in reliance upon Ford's representations concerning BlueCruise and its functionality.

90. A software-dependent technology feature has economic value that is affected by whether the feature operates as represented and receives applicable software support.

91. Affected consumers received less value than the value represented by Ford. Ford offers a subscription to consumers for BlueCruise at $45 per month.

92. Plaintiffs therefore suffered economic injury, including loss of the benefit of their bargain and diminution in value.

93. Plaintiffs do not need to establish a physical injury to establish their warranty and consumer-economic claims.

## CLASS ALLEGATIONS

94. Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and similarly situated consumers.

95. The proposed Nationwide Class is defined as:

**All persons in the United States who purchased or leased a Ford or Lincoln vehicle equipped with BlueCruise during the applicable class period (from BlueCruise offer date until present) and whose vehicle allegedly failed to receive, download, install, or implement an applicable BlueCruise software update and/or whose BlueCruise functionality failed to conform to Ford's material representations concerning the feature.**

96. The Class definition is subject to refinement following discovery concerning Ford's software architecture, update eligibility, model years, vehicle configurations, software versions, and technical records.

97. Plaintiffs anticipate that state-specific subclasses may be appropriate and that additional representative plaintiffs may be identified from other states.

98. Excluded from the Class are Ford, its subsidiaries and affiliates, its officers and directors, the Court and its personnel, and persons otherwise excluded by applicable law.

**Numerosity**

99. The proposed Class consists of numerous consumers located throughout the United States.

100. The exact number of affected consumers is presently within Ford's possession and control. On information and belief, however, Class Members will number in the thousands.

101. Joinder of all Class Members would be impracticable.

**Commonality**

102. Common questions of law and fact exist for all Class Members and predominate over questions affecting only individual Class Members. Common legal and factual question include but are not limited to:

a. whether Ford represented BlueCruise as a functioning and supported feature;

b. whether BlueCruise depends upon continuing software updates;

c. whether Ford represented that qualifying vehicles would receive applicable software support;

d. whether Ford developed and released BlueCruise software updates for qualifying vehicles;

e. whether qualifying vehicles failed to receive or successfully install applicable updates;

f. whether the alleged update condition results from a common or substantially similar software or system condition;

g. when Ford knew or should have known of the condition;

h. whether Ford adequately disclosed the condition;

i. whether Ford provided an adequate remedy;

j. whether Class Members received the value for which they paid; and

k. the appropriate method of calculating economic damages.

**Typicality**

103. The Plaintiffs' claims are typical of the claims of the Class because they arise from Ford's representations, sale, software support, and conduct concerning BlueCruise.

**Adequacy**

104. Plaintiffs will fairly and adequately protect the interests of the Class, have no conflicts of interest, and have retained experienced litigation counsel. Attorney

Matthews has had 30 years of litigation generally in Michigan Circuit Courts; 1 class action in Wayne County; 1 MDL in US District Court -Maryland; and 2 Whistleblower actions with the DOJ.

**Predominance**

105. Common questions concerning Ford's representations, software systems, update processes, knowledge, and conduct predominate over individualized questions concerning the particular vehicle of each Class Member.

**Superiority**

106. The class mechanism is superior to other available means for the fair and efficient adjudication of Class Members' claims. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Ford's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by this case's complex legal and factual issues. Individualized litigation also presents potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication of the common questions of law and fact, economy of scale, and comprehensive supervision by a single court on the issue of Ford's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

107. A class proceeding will efficiently resolve common issues concerning Ford's

BlueCruise technology, software-update system, representations, knowledge, and conduct.

**COUNT I**
**BREACH OF EXPRESS WARRANTY**
**APPLICABLE STATE LAW**

108. Plaintiffs incorporate by reference paragraphs 1-107.

109. Ford made express affirmations of fact or promises concerning BlueCruise's functionality, performance, availability, and software support.

110. Those affirmations or promises were communicated through Ford's vehicle materials, marketing, product information, software information, warranty materials, and related communications.

111. The affirmations or promises related to the vehicles sold by Ford and formed part of the basis of the bargain between Ford and Plaintiffs and Class Members.

112. Plaintiffs purchased a vehicle equipped with BlueCruise in reliance upon Ford's affirmations or promises.

113. The Plaintiffs' vehicle and BlueCruise system failed to conform to Ford's affirmations or promises because applicable software updates were not successfully provided and/or the BlueCruise functionality did not perform as represented.

114. Plaintiffs provided Ford and its authorized dealership notice of the condition and reasonable opportunities to correct it.

115. Ford failed to provide an effective remedy.

116. Plaintiffs and Class Members suffered damages as a result.

## COUNT II
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## APPLICABLE STATE LAW

117. Plaintiffs hereby by reference paragraphs 1-107.

118. Ford is a merchant with respect to the vehicles it sold to the Plaintiffs and other Class Members.

119. Ford impliedly warranted that the vehicles and their purchased features, including Blue-Cruise, were fit for their ordinary purposes and conformed to the promises or affirmations of fact made by Ford in the vehicle materials, marketing, product information, software information, warranty materials, and related communications provided to purchasers.

120. Affected BlueCruise-equipped vehicles were not fit for their ordinary purposes and did not conform to Ford's promises or affirmations of fact.

121. Plaintiffs and Class Members suffered economic damages as a result.

## COUNT III
## MAGNUSON-MOSS WARRANTY ACT
## 15 U.S.C. §§ 2301 ET SEQ.

122. Plaintiffs incorporate by reference paragraphs 1-107 and 109-116.

123. Plaintiffs and Class Members are consumers within the meaning of the Magnuson-Moss Warranty Act (the "Act").

124. Ford is a warrantor and/or supplier within the meaning of the Act.

125. Ford provided written warranties concerning its vehicles and their components and systems.

126. To the extent applicable written warranties cover BlueCruise functionality, software, components, or Ford's obligation to repair defects, Ford breached those warranty obligations by failing to repair or correct the alleged condition.

127. Plaintiffs provided Ford and its authorized dealership reasonable opportunities to correct the condition.

128. Ford failed to provide an effective remedy within a reasonable period.

129. Plaintiffs and Class Members suffered economic damages as a result.

130. Plaintiffs seek all remedies available under the Act for Ford's violation of the Act.

## COUNT IV
## VIOLATIONS OF MCL 445.903(1) AND OTHER STATE CONSUMER-PROTECTION STATUTES

131. Plaintiffs incorporate by reference paragraphs 1-107.

132. Ford engaged in trade and commerce in connection with the marketing, sale, warranty, and continuing support of vehicles equipped with BlueCruise.

133. Ford represented BlueCruise as a material feature of qualifying vehicles and represented that the technology would provide identified functionality and continuing software support.

134. Ford failed to disclose material information concerning the ability of certain vehicles to receive, install, and implement applicable BlueCruise updates and the resulting effect on BlueCruise functionality.

135. Plaintiffs and Class Members paid consideration for vehicles and

BlueCruise functionality that was worth less than represented.

136. Such conduct constitutes deceptive, unfair, misleading, unconscionable, or otherwise unlawful conduct under the consumer-protection statutes of the states represented by Plaintiffs and proposed state subclasses.

137. As to the Plaintiffs, for example, Ford violated MCL 445.903(1)(b) (by using deceptive representations in connection with the sale of its vehicle), (1)(c) (by representing to the Plaintiffs that the vehicle outfitted with BlueCruise have characteristics, uses, or benefits that it did not have), (1)(e) (by representing that the vehicle outfitted with BlueCruise was of a particular standard, quality, or grade when it was of another), (1)(p) (by disclaiming or limiting the implied warranty of merchantability and fitness for use, without clearly and conspicuously disclosing the disclaimer), (1)(s) (by failing to reveal known issues concerning BlueCruise, the omission of which tended to mislead or deceive the Plaintiffs, and which the Plaintiffs could not reasonably have known), (1)(w) (by representing that the Plaintiffs would receive the benefit of the BlueCruise system as an inducement for entering into the transaction, when the benefit was contingent on an event to occur subsequent to the consummation of the transaction, namely, that the BlueCruise system could be updated as represented), (1)(bb) (by making representations of fact material to the transaction concerning the BlueCruise system, such that the Plaintiffs reasonably believed the represented or suggested state of affairs to be other than it actually was), and (1)(cc) (by failing to reveal facts concerning the BlueCruise system

that were material to the transaction in light of representations of fact that Ford in a positive manner), in Michigan. The precise statutory claims for other Class Members will be pleaded according to the law of each represented state after appropriate representative plaintiffs are identified.

138. Plaintiffs and Class Members suffered economic damages as a result of Ford's violations of MCL 445.903(1) and other state consumer-protection statutes.

**COUNT V**
**UNJUST ENRICHMENT**

139. Plaintiffs incorporate by reference all paragraphs 1-107.

140. Plaintiffs and Class Members conferred economic benefits upon Ford by purchasing vehicles and BlueCruise as an "Option" for an extra charge.

141. Ford retained those benefits while failing to provide the functionality and software support for which consumers paid.

142. Retention of those benefits under the circumstances alleged would be inequitable.

143. Plaintiffs plead this claim in the alternative to their breach-of-warranty claims.

**COUNT VI**
**PRODUCT LIABILITY / DEFECTIVE DRIVER-ASSISTANCE SYSTEM**

144. Plaintiffs incorporate by reference paragraphs 1-107.

145. Ford designed, manufactured, supplied, marketed, sold, warranted, and supported vehicles equipped with BlueCruise.

146. BlueCruise is a software-dependent driver-assistance system integrated

into qualifying Ford and Lincoln vehicles.

147. Plaintiffs allege that affected BlueCruise systems contain a defect in software, software-update capability, system integration, or related functionality that prevents the system from fully performing the safety-related functions represented by Ford.

148. Plaintiffs further allege that the defect may prevent qualifying vehicles from receiving or implementing software updates necessary to correct, improve, or maintain the represented functionality.

149. The alleged defect is not merely cosmetic.

150. BlueCruise is marketed as a driver-assistance technology intended to assist drivers during highway operation.

151. Ford's representations concerning the operation of BlueCruise therefore concern functionality affecting the safe operation of the vehicle.

152. A driver-assistance system that does not perform material functions represented by its manufacturer, or that cannot receive applicable software updates necessary to maintain or correct those functions, constitutes a defective product under applicable law.

153. Ford knew or should have known of the alleged condition through consumer complaints, dealership reports, warranty and service records, software-update records, technical information, engineering information, and other information within Ford's possession and control.

154. Ford nevertheless continued to manufacture, market, sell, warrant, and

support vehicles equipped with BlueCruise without adequately correcting the alleged defect or adequately disclosing its material limitations.

155. Technically feasible software, hardware, diagnostic, repair, replacement, or other corrective measures existed or exist that could prevent or substantially reduce the alleged condition without materially impairing the usefulness of the vehicle.

156. Evidence concerning those alternatives is substantially within Ford's possession and control and will be developed through discovery.

157. Plaintiffs plead this count in the alternative to their warranty and consumer-protection claims.

158. Plaintiffs acknowledge that product-liability claims are governed by the law applicable to the particular plaintiff and alleged injury and that some jurisdictions, including Michigan, restrict tort recovery for purely economic losses arising from a product that allegedly fails to perform as expected.

159. Plaintiffs therefore do not rely upon this count as a substitute for their warranty and consumer-protection claims.

160. To the extent any Class Member suffers personal injury, property damage, or other legally cognizable harm caused by the alleged defective BlueCruise system, that Class Member may pursue the remedies available under the applicable law.

## COUNT VII
## DECLARATORY AND INJUNCTIVE RELIEF

161. Plaintiffs incorporate all by reference paragraphs 1-107.

162. Plaintiffs seek declaratory and injunctive relief to the extent authorized by applicable federal and state law.

163. Plaintiffs seek appropriate relief requiring Ford to accurately disclose material limitations concerning BlueCruise software updates and functionality.

164. Plaintiffs further seek appropriate relief requiring Ford to provide an effective corrective remedy for qualifying affected vehicles where such relief is authorized by law.

165. Plaintiffs seek appropriate relief prohibiting Ford from making materially misleading representations concerning BlueCruise functionality or software support.

## ECONOMIC DAMAGES

166. Plaintiffs and Class Members suffered economic injury.

167. Such damages may include:

a. overpayment;

b. diminution in vehicle value;

c. loss of the benefit of the bargain;

d. loss of the value of BlueCruise;

e. expenses incurred attempting to obtain repairs or software updates; and

f. other damages recoverable under applicable law.

168. Plaintiffs’ principal economic injury is independent of any alleged physical injury or death arising from a BlueCruise-related collision.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

- certify the proposed Nationwide Class and appropriate state subclasses;
- appoint Plaintiffs as Class Representatives;
- appoint appropriate Class Counsel;
- declare Ford's conduct unlawful to the extent established under applicable law;
- enter appropriate declaratory and injunctive relief;
- award Plaintiffs and Class Members actual damages;
- award diminution-in-value and/or benefit-of-the-bargain damages;
- award restitution and disgorgement where authorized;
- award statutory, treble, punitive, exemplary, or enhanced damages where authorized by applicable law;
- award all relief available under the Magnuson-Moss Warranty Act to the extent applicable;
- award reasonable attorneys' fees and litigation expenses where authorized;
- award prejudgment and post-judgment interest;
- award costs of suit; and
- grant such other relief as the Court determines just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

**PW MATTHEWS, PLLC**

Dated: 08-14-2026 /s/ ___*PHILIP MATTHEWS* _____

PHILIP MATTHEWS (P53649)
Attorney for Plaintiffs
22422 Edison Street
Dearborn, Michigan 48124
313-492-0991
pmlaw17@gmail.com